Good morning, Your Honor. Christopher Johns for the Petitioner Appellant, Frank Charles. I'll reserve five minutes, Your Honor, and I'll watch the clock very carefully. Your Honors, I did submit a recent decision to the panel by way of a 28-J letter, which was the case of Johnson v. Finn, which I believe has some particular applicability here. The most important part of that recent decision is that it reaffirms that under the determinations made in the State Trial Court that this Court owes absolutely no AEDPA deference to the State court determinations. And the reason for that is this, that as to Step 3 of the Batson analysis, there was never a finding made that the prosecutor's stated reasons for peremptory challenging five African Americans were either credible or genuine. Well, isn't there an important difference between this case and Johnson in that in this case, the judge who made that determination had been face-to-face with the prosecutor at the Wheeler hearing, and that's – and I think in Johnson that wasn't true. Well, Johnson is a restatement of the general rule that no AEDPA deference is owed. Well, I'm going to ask you, though, are they factually distinct in that way? They are, because they were dealing with different prongs in the analysis. They were dealing with the prima facie basis and the standard imposed. And this is prong 3. And they never got to prong 3 in our case and – or in that case, but they were really adjudicating prong 1. And that was the factual distinction. In this case – I thought the distinction was that for some reason the judge who ruled on the Wheeler motion was not the one who presided over Wadeer. That I'm not sure, Your Honor. Johnson. Yeah. Which is a significant problem, because we normally defer, as you know, to the judge who oversees the selection. I'm sorry, Your Honor. We had a miscommunication. It's my fault. Okay. What I was talking about was the State trial judge. In Wheeler, we were addressing it at the Federal level. But the reason that you were addressing it at the Federal level was because there was no epidefference to the State trial decision. And that's the reason that I've cited it, is that in this case, the Charles case, there is no epidefference to the State trial court determination. But you're correct. Johnson established the proposition that when there had been an evidentiary hearing by the magistrate who made a credibility determination in the Federal court, that the district judge had to either accept the magistrate judge's finding on credibility grounds or he had to conduct a de novo hearing where he would make that decision. Basically, we said the district judge has to do the evidentiary hearing all over again. Correct. And the ---- Before he can reject the magistrate's credibility. Correct. Absolutely. That's true. So that is a significant distinguishing feature, is it not? Well, it is a distinguishing feature, but the principle for which I'm citing Johnson is this, that when there is an adjudication of a Batson claim, it's dependent on an antecedent unreasonable application of Federal law, then there is no deference owed. It could be the same with regard to the question of fact. And in this case, there was an antecedent unreasonable application of Federal law because there was never a determination as to step three of the Batson claim. Let me ask you, one of the issues that bothers me about the case is how we apply the Supreme Court's decision in Penholster, because there's no question that the Superior Court had before it the questionnaires of the voir dire or the veneer. It did, Your Honor. And presumably the trial court judge who oversaw voir dire had those questionnaires available at the time that the Wheeler motion was made. He did, Your Honor. So assuming that to be true and assuming that the Court actually looked at them when it asked the – when the challenge was made, why should we not infer from the Court's denial of the Wheeler motion that the Superior Court judge credited the reasons that were offered by the prosecutor in light of not only what the prosecutor was saying, but the answers contained in the questionnaire? Because as we go back to this recent Johnson case, it indicates that you need to make an express finding, and when you go back to Batson, you have to have – you have to undertake a sensitive inquiry, and as this Court said in Castor v. Canberra, you know, you have to demonstrate that on the record. And even though the Supreme Court in Batson said it's a sensitive inquiry, you have to undertake it and it has to be reflected on the record, the Supreme Court in Miller-Ale then presumed that the State and the court of appeal did not do so because it was not reflected on the record. And here, by the same token, it is not reflected on the record. What we have here is – here's the State, page 14 of my brief. The Court finds that you have listed a non-race-based reason for the exclusion of each one of these and its five potential jurors. And based on that, that's what's required. And based on that, then the Wheeler motion is denied. There's no finding that's either genuine or credible. Kagan. The State appellate court understood that to be implicitly a finding that those reasons were credible, because otherwise the court would not have been able to deny the motion. So aren't we really examining the State court of appeal decision as the last reasoned decision in determining whether it was an unreasonable application of the Batson? You do examine the State court of appeal decision, which starts at page one of the excerpt of record, and you look at that to see what they did. In one, they rejected a comparative juror analysis, but then they gave deference to a trial court's finding that was never made. If we go to page 8. Well, I guess we maybe have a different view of what the State courts were doing here, and that is it's true that the trial judge said, you've listed these reasons rather than I find that you have these reasons. But I guess I read the appellate decision as implicitly considering that to be a credibility finding in favor of the prosecutor's truthfulness. Well, here's what it says, just to take one example, because they make similar conclusions as to each of the five jurors at issue. And on page 8 of the excerpt of record, it says I've got page 8. What do you want me to look at? These arguments are based on either a comparative analysis of the responses of the jury panelists, which is not permissible, and in all offense is based on a partial information in only remotely comparable situation, or the defendant's disagreement with the prosecutor's reasons and evaluation. Then it goes on and states, The trial court found that the reasons by the prosecutor were not pretextual. We see in the record no reason to deny the trial court's finding the deference to which it is implied. Right. That's exactly what I'm saying is the appellate court's assertion that the trial court's statement was a holding or a finding that the reasons were not pretextual. It's not here in the record. They are upholding a finding that was not made. Let me turn to something that Judge Tallman was starting to talk about and is of concern to me, and maybe both counsel can deal with this. The State appellate court clearly refused to do a comparative juror analysis, and our court has said that that is required. And so that's a mistake, but we have the questionnaires in the record, and assuming that we look at them, what is your best case that there is, in fact, enough in these comparisons to require a finding that the prosecutor was pretextual? I can, Your Honor. If we went to just one juror, Phyllis Bryant, the prosecutor said that there was one reason why that they were going to go ahead and disqualify this juror, and it had to do with question number 10. And under the principles of law, question number 10, which is why it was important to have the juror questionnaire so you can actually see what the language was, and this juror, Phyllis Bryant, says, you know, I don't know, I don't know, I don't know. Give me a page number that will help. Okay. Yes, the board here is at 198.15 to 200. The prosecutor's stated reason is at 403.14. And at 403.14, the prosecutor says, Phyllis Bryant, on page 13 of the questionnaire, there was a question number 10. In every criminal trial, the prosecution has the burden of proof on every element. And if the prosecution does not meet this burden, you must vote not guilty. And she was asked about that, and she had a question about it. And he says that because she initially had some reservation about that, that goes to page 404, but when I get a, I don't know or I'm not sure, I'm going to kick them off based upon that alone. So that's why this juror was disqualified, because she raised a question about the prosecutor's burden, and it was under principles of law, question number 10. But the point being is that they never did a comparative juror analysis, because when you go to alternate juror number one, okay, there were five questions in the And with regard to the first five questions under principles of law, they're asked the questions, you know, can you follow the instructions? And when we get to 859 where there are the answers, which is why it was important  This juror has said yes to the first five principles of law, the first two indicating that they would not be able to perform, they'd find it difficult to be a juror. Then that was changed. They were lying through, and then we have five nos. But if you carefully go through questions 3, 4, and 5 at the excerpt of Record 859, this juror is then saying, that's number 5, as a juror, you must accept and follow the instructions of the law as instructed by the judge. You must follow these instructions of law, even if you disagree with the instruction. Would you accept and follow the instruction as instructed by the judge? Answer, no. Now, the reason that this is significant, and the same we have the same answer with regard to But question number 10 is a yes answer on page 860. Correct, correct. But the point here is that there's no follow-up by the prosecutor with regard to this, other than to say, hey, you made some mistakes here, because they didn't care, because this was an African-American juror, and that's why it shows it's pretextual that when you have a similar type question, there's no, absolutely no follow-up other than to acknowledge, hey, you're going fast. But that's exactly what the other juror was doing. She says, I was going fast, and I got to question number 10, and I just put a question mark. It's the same thing here. But this juror, there was no follow-up questions on it, and these are very important. Are you going to follow the judge's instruction? And someone says no, and then someone else raises a question about that, and they eventually say, yes, I'm going to follow the judge's instruction, but they're kicked off. This person sits. Counsel, you have about a minute and a half, if you want to save that. Let me save that, Your Honor. Thank you. Baskine, for Pelley. Okay. Starting where counsel left off, the question was, what is your best example of why the questionnaires are relevant and important? Well, no, that wasn't the question. The question was whether doing the comparative juror analysis on these questionnaires reveals a pretext. Right. Is there anything that those questionnaires bring out that wasn't in the review? Well, I guess I'm quarreling with you because our case law makes it clear that the comparative juror analysis should have been done, and the State Court of Appeal refused to do it. So that's a mistake. So then we have to deal with that mistake. And the questionnaires were in the record from the get-go. They were in the State Court record, and they came on over to the Federal Court. So we don't really have a new evidence problem here. But under some standard of review, we have to now look at those and determine whether, notwithstanding the procedural mistake that the State Court of Appeal made, whether it still reached a conclusion that was not unreasonable. So that's what I need for you to address head-on is whether what those juror questionnaires tell us about whether they undermine the State trial court's finding that the prosecutor was credible. Okay, Your Honor. I have to admit I'm not 100 percent clear on the distinction between what we're saying, but I don't think it matters that much. Let me try and rephrase it, because I have the same concern. Is this akin to looking at a ruling by a State court on AEDPA review where the State court has inadequately articulated, or in this case failed to do all of the steps in the analysis that we want it to do, and on AEDPA review we look at the record ourselves and decide, even though it was unarticulated, does it still meet the objectively reasonable standard of AEDPA? I don't know if that helps. Well, my short answer is yes. Well, I know that's your answer, but you didn't tell us why you get it. I was told I should always answer the question first and then explain myself. Well, first of all. I'll do the analysis. Yes. First, I want to say that I don't agree that this evidence was before the State court. We have a State appellate court, and the questionnaires were not presented to that court. The trial court had them. They were available. And Petitioner raised the claim, and he made a very extensive comparative analysis argument at the court of appeal. But he didn't bring in the questionnaires. He relied completely on the voir dire. So the court of appeal, it wasn't the court of appeal's job to go to the trial court and get the questionnaires when they weren't discussed by him. So he didn't present it to the State court. Well, regardless of that, the State court didn't, the appellate court didn't want to do a comparative analysis even as to voir dire. So looking at voir dire, if you want to separate out voir dire from the questionnaires, that would actually be helpful, but I'd still appreciate a little bit more detail on what things showed us about the jurors. Okay. Well, I don't think they show anything new. I don't, I mean, you asked for an example, and counsel gave you one. And I don't have the excerpts of record with me, unfortunately, so I'm not sure which question he's talking about. I don't believe he referred to that in his arguments. However, what we have is Phyllis Bryant responding to question 10. And we have juror number 1 responding to the exact same question, and they have different answers. So counsel wants to look at a similar question and show that there's some kind of pretense here. But when we look at the exact same question from both jurors, we get different answers. So they are distinguishable. Now, counsel also looks at juror number 1's answers, those five in a row where she checked off all the no's and then all the yes's. And, you know, I really find that to be somewhat ludicrous. I mean, the problem we have here is that she, alternate juror number 1, made a mistake. It's clear she made a mistake. She had filled out a bunch of boxes on one page, skipped a couple of pages, and then started filling off the boxes. And then she realized, oh, the boxes are on different sides on this page. And it's a very understandable error. And when the judge asked her or the prosecutor asked her about it, she said, this is what I did. I made a mistake, and then I realized it, and I corrected it. And the problem with Phyllis Bryant is that when the prosecutor said, you're going down here, and why did you write, I don't know, not sure, she didn't answer the question. If she had said, I wasn't sure at that time, I thought about some more, and I realized that I have no problem with it, that would have been an answer to the question. But she just said, you know, I was looking at the questions, and I just marked it. And she never came back to it. She never resolved her question in her head. She never changed the questionnaire. So the prosecutor felt he didn't get a straight answer. The question was, why did you put that? She didn't leave it blank. She didn't put an answer and change it. She wrote by hand, I don't know, not sure. So she affirmatively indicated a lack of conviction about finding the defendant guilty. And she never explained where that came from, if she changed her mind, until during voir dire, she finally came around to saying, well, you know, I don't know why I did that, but, yeah, sure, I can do that. The prosecutor didn't trust her, and there's good reason for that. As far as AADP 8 deference goes, I believe this Court looks at the court of appeals opinion, and they made a reasoned opinion, and they deserve deference. The court of appeal made findings and gave its opinion about the trial court's ruling, and nothing there is outrageous or unreasonable. Counsel raises Johnson v. Finn, and I think we talked, the court talked about several different ways that that's distinguishable. I think the most important way that that case is distinguishable is that the judge at the trial court ruled that the defendant had not made a prima facie case and did not go to steps two and three. So, I mean, there is, you know, absolutely no doubt about it, no findings on steps two and three, no question about that, whereas here the judge found that there was a prima facie case, allowed prosecutor to make his reasons on the record, and said you've satisfied your burden and denied the motion. And I think it's inconceivable that the judge said, okay, you've listed non-race based reasons, I think they're all pretextual, but I'm still going to deny the motion. I mean, it's implicit that the judge believed those reasons that the prosecutor gave, and the prosecutor gave very lengthy explanations for each of the challenged jurors, and, you know, sure, the judge could have picked out some of them and, you know, expressed approval of them, but that was not required. There's no magic formula of what the trial court has to say. It's clear that the trial court understood what Batson means and what needs to be found, and by saying you've listed non-race based reasons, it believed the prosecutor was being genuine. And if there are no further questions? I don't believe there are. Thank you. Mr. Johns, you have a little bit of time remaining. If I could, Your Honor, I just wanted to follow up on the one point that you made, give another example. Harry Fuller, he was another juror that was bounced, and he gave one of the reasons that was given was that he had said with regard to the same question, page 12, question 5, if he disagreed with the instructions, would he accept and follow the laws instructed by the judge? And Fuller said no. He had moral principles. They went over it, the judge inquired, and he finally said, yes, I can do that. But when we go back to alternate juror number 1, this was the so-called mistake was she changed the answers. And the changed answers to alternate juror number 1 is a no, the same no to question number 5. There was no follow-up. All the prosecutor ever did with regard to these five questions is at page 45 of my brief. Let me just show you page 12, the page we're talking about. Oh, yeah, rather long. I wanted to make sure there wasn't a change of heart. No, I read it wrong. Checked the wrong box. Yes. Going kind of fast. Yes. When you go back then to the box that was checked, the correction, the correction is no to question number 5. You know, I can't follow the instruction. But there's no follow-up. And it's the same with regard to 3 and 4 with regard to evidence and credibility of witnesses, but no follow-up. And the question was, what's your response to the problem with the way that the questionnaire was printed at that point? In other words, if the order of the yes and no boxes got reversed for some reason? No. There's just yeses on this side, nos on this side, and there are just a lot of questions. You can see it's a 17-page. There was no transposition of the boxes? Is that what I'm going to find when I look at the pages that we're talking about? No. What you'll see, Your Honor, when you look at it is when she answered first, she checked all yes. She lied? That's not my question. My question is, was there or was there not a transposition of the yes and no answer boxes in the middle of the questionnaire? No, there wasn't. There wasn't a transposition. They're different on different pages. They're just almost random. I can get it for you, Your Honor. I mean, I'll look at it. But I don't think this is going to help me. I have it in page 59. It's the principles of law. And it says yes on the left, no on the right. She first checks yes, lines through it, then checks no. The no answer is no, I'm not going to follow the law. I guess the question is, what is it on the preceding page? Is the order of the yes and the no boxes? The preceding page doesn't have yeses and nos, but there are some. Some are. So it jumps around. It jumps around.  That's all I wanted to know. Sometimes no, sometimes no. But that's the point I was making. It's the same question with regard to Mr. Fuller. He was challenged. Alternate juror number one was not. But the most important part, there's no follow-up here. There's no substantive follow-up to explain this. Thank you, counsel. We appreciate the arguments of both counsel. The case is submitted.
judges: Timlin, Graber, Tallman